# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FIDELITY & DEPOSIT**
**COMPANY OF MARYLAND,**

          **Plaintiff,**

    **v.**                                             **Case No. 07-C-003**

**CAPE BROTHERS REALTY**
**& EQUIPMENT COMPANY, and**
**CURKEET SERVICES, INC.,**

          **Defendants.**

## DECISION AND ORDER

This matter is before the Court on the issue of the amount of damages, if any, to be awarded to the Plaintiff, Fidelity & Deposit Company of Maryland ("Fidelity"), on its motion for default judgment against the two remaining defendants in this action, Defendants Cape Brothers Realty & Equipment Company ("Cape Brothers") and Curkeet Services, Inc. ("Curkeet") (collectively the "Defendants"), jointly and severally. Jurisdiction over this matter exists under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. A limited recitation of the relevant procedural background provides the context for Fidelity's damages claim.

*Relevant Procedural Background*

By a December 14, 2009, Decision and Order, the Court granted Fidelity's motion for default judgment finding that the Defendants were liable, jointly and severally, for damages including attorneys' fees; consultants' fees; and interest on Fidelity's Amended Complaint for indemnification and other relief based on the parties' Agreement of Indemnity. However, because the Affidavit of Steven A. Hauck ("Hauck Affidavit I") that Fidelity relied upon to establish its damages contained numerous discrepancies, the Court denied the motion as to a damage award. A January 19, 2010, deadline was established for Fidelity to resubmit documentation in support of its damages claim. Having determined that Wisconsin law applies to the action, including the issue of prejudgment interest, the Court indicated that if Fidelity sought prejudgment interest it should calculate the amount of prejudgment interest through the anticipated date of entry of judgment.

Fidelity resubmitted documentation in support of its damages claim on January 19, 2010. However, as stated in its January 26, 2010, Decision and Order, the Court determined that the resubmitted Hauck affidavit ("Hauck Affidavit II") did not resolve or correct the numerous discrepancies that the Court had described in its December 14, 2009, Decision and Order. The Court also found, although Fidelity had provided the Court with voluminous pages of bills or invoices to establish the consultants' fees and attorneys' fees incurred in the case, there was no recapitulation or explanation for how Fidelity incurred $387,407.06 in consultants' fees and $260,841.12 in attorneys' fees. The Court also noted that the invoice from the law firm of Riordan, Donnelly, Lipinski & McKee, Ltd. for attorneys'

fees totaling $165,108.00, did not demonstrate that Fidelity was entitled to recover the claimed $260,841.12 in attorneys' fees.

Due to those problems, the Court allowed Fidelity one more opportunity to resubmit proof of its damages. Fidelity was informed that such proof "must include supporting documentation for any and all of Fidelity's claims, including but not limited to, Fidelity's claims of attorneys' fees, consultants' fees, and interest." (Court's January 26, 2010, Decision and Order, 3). Fidelity was also directed to submit the information in a manner where the amount incurred would be "easily ascertainable by the Court." (*Id*.) Those papers, filed on February 26, and March 1, 2010, are now before the Court for consideration.

*Analysis*

Fidelity issued numerous bonds on the behalf of James Cape & Sons Company ("Cape"), a contractor. The Defendants executed a general Agreement of Indemnity for those bonds and in return for the execution by Fidelity of certain surety bonds, agreed, jointly and severally, to exonerate, indemnify and hold Fidelity harmless from and against losses and expenses sustained or incurred by Fidelity as a result of having issued such bonds. (Am. Compl. ¶ 17.) More specifically, pursuant to the terms of the Agreement of Indemnity, the losses and expenses include any and all liability for losses and/or expenses of whatsoever kind or nature, including, but not limited to, interests, court costs, and counsel fees. (*Id*.) And, this Court has entered default judgment finding that the Defendants are jointly and severally liable for the damages that Fidelity sustained as a result of its own liabilities on those bonds.

Fidelity avers that it sustained losses of $2,451,066.00 exclusive of attorneys' fees, consultants' fees, expenses, interest, and costs. The losses were incurred based on Fidelity's fulfillment of its obligations under the Central Repair Garage Bond, the Outagamie Bond, the Milwaukee Green Bay Ramps Bond, the Racine Root River Pathway Bond, the Chippewa Valley Bond, the US Highway 41 Bond, the Highway 31 Kenosha Bond, the Fond du Lac Bond, the Janesville Bypass Bond, the North 8th Street Bond, the North Fratney Bond, the GMIA (General Mitchell International Airport) Entrance Ramp Bond, the Algoma Bond, the Route 14 Northwest Highway Bond, the DuPage Bond, the Miami County Bond, the GMIA Airport Bond, the Orchard Road Bond, the Dilley's Road Bond, the Winona County Bond, and the Racine Water Utility Bond. Fidelity also avers that it has incurred $394,210.06 in consultants' fees[1] and $260,841.12[2] in attorneys' fees, costs, and expenses. Fidelity also avers that it has recovered $1,155,505.68 from the remaining contract funds on some of the above projects and, therefore, claims $1,950,510.50 exclusive of interest, costs, and the costs of bringing its motion.

The Court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in

---

[1] The Hauck Affidavit III states the amount Fidelity paid for consultants fees' is $394,210.06, in paragraph 472 and on page 80, but contains a typographical error in paragraph 478 where it lists the amount as $94,210.06. The claimed consultants' fees have increased by $6,803.00 from the $387,407.06 for consultants' fees claimed by the Hauck Affidavit II.

[2] The amount claimed as attorneys' fees is unchanged from the amount claimed by the Hauck Affidavit II.

4

detailed affidavits." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Fidelity relies upon the Hauck Affidavit filed February 26, 2010 ("Hauck Affidavit III"), and more than five inches of attached exhibits, including 52 invoices, totaling 214 pages, from Nicholson Professional Consulting (Ex. 126); computerized time sheets and 29 invoices from the law firm of Riordan, Donnelly, Lipinski & McKee, Ltd., totaling 425 pages (Ex. 127); and computerized time sheets and eight invoices from the Riordan McKee & Piper, LLC law office, totaling 63 pages (Ex. 128).

The Court has carefully reviewed Fidelity's recent filings and concludes that, on its third attempt, the documentation attached to the Hauck Affidavit III establishes that Fidelity sustained losses of $2,451,066.00 on the subject bonds. With respect to its consultants' fees and attorneys' fees, costs, and expenses, Fidelity could have greatly facilitated the Court's review by listing the invoice dates, the time periods for the work, and amounts paid in a manner similar to its recapitulation of the bond payments in paragraph 476 of the Hauck Affidavit III. Nonetheless, as tabulated by the Court, the invoices included in Exhibit 126 establish with reasonable certainty Fidelity's claimed expenditure of $394,210.06 in consultants' fees and expenses.

With respect to attorneys' fees, costs, and expenses, the applicable case law provides that when a party is entitled to attorneys' fees pursuant to a contract the court must award the prevailing party the costs and fees incurred if those expenses were commercially

5

reasonable. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). *See also Taco Bell Corp v. Cont'l Cas. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004). "[R]easonableness must be assessed using the market's mechanisms. . . . If the bills were paid, this strongly implies that they meet market standards." *Medcom Holding,* 200 F.3d at 520 (citing *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 152 (7th Cir. 1996)). Additionally, when corporate inside counsel monitors the bills submitted by outside counsel and they are paid, reasonableness can be inferred. *See Balcor Real Estate Holdings*, 73 F.3d at 153.

The Court has paged through the invoices of outside counsel and tabulated the attorneys' fees, costs, and expenses. That process has established that the documentation supports the amount of attorney's fees, costs, and expenses claimed. The invoices were addressed to Hauck, in-house counsel for Zurich American Insurance Company who has served as Claims Counsel for Fidelity since 1987, (*See* Hauck Aff. ¶ 2 & Ex. 127, Ex. 128), and Fidelity has paid those fees, (*Id.* at ¶¶ 473-75). Although not explicitly stated, the evidence suggests that Hauck monitored those invoices. As such, the Court may infer that the attorneys' fees were commercially reasonable. *See Balcor Real Estate Holdings*, 73 F.3d at 153. Based on the foregoing, Fidelity has established with reasonable certainty that it should be awarded $260,841.12 for its attorneys' fees, costs, and expenses.

Fidelity has met its burden of proving that its losses on the bonds, consultants' fees, and attorneys' fees, costs and expenses total $3,106,117.18. However, Fidelity also avers that it recovered $1,155,606.68 from the remaining contract funds. Subtracting that amount

from Fidelity's losses, and consultants' and attorneys' fees, the net amount that Fidelity is entitled to recover from Cape Brothers and Curkeet, jointly and severally, is $1,950,510.50.

Fidelity also requests interest, costs, and the costs of bringing its default judgment motion. Since Fidelity is the prevailing party in this action, the judgment will include an award of post-judgment interest pursuant to 28 U.S.C. § 1961. *See Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1104 (7th Cir. 1990) (stating that section 1961(a) of the Judicial Code entitles the prevailing plaintiff in a federal suit, including a diversity suit, to postjudgment interest at a rate fixed in the statute). Fidelity may also file a bill of costs with the Clerk of Court pursuant to Fed. R. Civ. P. 54, 28 U.S.C. § 1920, and Civil Local Rule 54. Those costs must not include costs that Fidelity has recovered as a part of its damages award.

Fidelity is also awarded the reasonable "costs" of bringing its default judgment motion. On or before April 12, 2010, Fidelity may submit an itemized request for the "costs" of bringing the motion, with supporting documentation, in a format where the amounts claimed are readily ascertainable and verifiable.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Fidelity's motion for default judgment (Docket No. 120) is **GRANTED** as to damages to the extent that Fidelity is entitled to recover $1,950,510.50 in damages from Cape Brothers and Curkett, jointly and severally, to compensate Fidelity for its uncompensated losses on the bonds it issued for Cape, consultants' fees, and attorneys' fees, costs and expenses from February 1, 2005, through November 30, 2009;

Fidelity must file its claim for the costs of bringing its default judgment motion, consistent with Decision and Order, no later than April 12, 2010;

Fidelity is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961;

Fidelity may file a bill of costs with the Clerk of Court pursuant to Fed. R. Civ. P. 54, 28 U.S.C. § 1920, and Civil Local Rule 54;

This action is **DISMISSED**; and,

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of March, 2010.

**BY THE COURT**

*s/ Rudolph T. Randa*
**Hon. Rudolph T. Randa**
**U.S. District Judge**